Steven M. Morger (Bar No. 115108)
smorger@wendel.com
Robert W. Selna (Bar No. 230385)
rselna@wendel.com
**WENDEL ROSEN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone:  (510) 834-6600
Fax:  (510) 834-1928

Attorneys for Attorneys for Plaintiffs CCSAC,
Inc. and CANN Distributors, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CCSAC, Inc., a California corporation and CANN DISTRIBUTORS, INC., a California corporation, | Case No. |
| Plaintiffs, | **COMPLAINT FOR BREACH OF CONTRACT, FRAUD, NEGLIGENCE, INJUNCTIVE RELIEF AND DECLARATORY RELIEF - DUTY TO INDEMNIFY** |
| vs. | |
| PACIFIC BANKING CORP., a Washington corporation, JUSTIN COSTELLO, an individual and GRN FUNDS, LLC, a Washington limited liability company, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

*Wendel Rosen LLP*
*1111 Broadway, 24th Floor*
*Oakland, California 94607-4036*

021794.0009.5799848.1

**COMPLAINT FOR BREACH OF CONTRACT**

**INTRODUCTION**

1.     Jurisdiction in this action is premised on diversity of citizenship in that plaintiffs CCSAC, Inc. ("CCSAC") and CANN Distributors, Inc. ("CANN") are citizens of California, while plaintiffs are informed and believe that defendants are citizens of the state of Washington or Nevada (as more fully alleged below).  The amount in controversy exceeds $2.8 million.

2.     In June 2019, CCSAC and Pacific Banking Corp. ("PBC")  entered into a Capital Management Agreement whereby PBC agreed to perform certain banking services at the direction of CCSAC.

3.     In April 2019, CANN and PBC entered into a Capital Management Agreement whereby PBC agreed to perform certain banking services at the direction of CANN.

4.     In furtherance thereof, plaintiffs deposited in excess of $2.8 million with PBC.

5.     Plaintiffs are informed and believe and based thereon allege that PBC unilaterally transferred some or all of plaintiffs' funds to accounts held by GRN Funds, LLC ("GRN"), an entity controlled by its chief executive officer, Costello.  GRN has issued checks or been referenced on checks issued in payment of certain accounts of plaintiffs.

6.     Despite the existence of the Agreements and the deposit of funds, PBC has failed to execute the financial transactions required of it by the Agreements and by the directions of plaintiffs.  In response to inquiries from plaintiffs, PBC and Justin Costello ("Costello") have made repeated false statements about the payments instructed by plaintiffs to be made, including that PBC had paid one million dollars ($1,000,000) to the California taxing authorities to fund tax liabilities of plaintiff CANN.

**PARTIES**

7.     Plaintiff CCSAC, Inc. ("CCSAC") is a California corporation with its principal place of business in Alameda, California.

8.     Plaintiff CANN Distributors, Inc. ("CANN") is a California corporation with its principal place of business in Oakland, California.  CANN and CCSAC are affiliated companies.

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

**COMPLAINT FOR BREACH OF CONTRACT**     2

9.      Plaintiffs are informed and believe and on that basis allege that defendant Pacific Banking Corp. ("PBC") is a Washington corporation, with its principal place of business in Bellevue, Washington.

10.     Plaintiffs are informed and believe and on that basis allege that defendant Justin Costello is the chief executive officer of PBC and GRN and is a resident and citizen of the State of Washington or the State of Nevada.  Costello executed the Capital Management Agreements on behalf of PBC.

11.     Plaintiffs are informed and believe and on that basis allege that defendant GRN Funds, LLC is a Washington limited liability company with its principal place of business in Seattle, Washington.

## JURISDICTION

12.     Jurisdiction is premised on diversity of citizenship, 28 U.S.C. 1332.  Plaintiffs are citizens of California.  Plaintiffs are informed and believe that defendants are citizens of the State of Washington or Nevada and are not citizens of California.

13.     The amount in controversy in this action substantially exceeds $75,000. Specifically, the damage suffered and recoverable by Plaintiffs exceeds $2.8 million, exclusive of interest and costs.

## INTRADISTRICT ASSIGNMENT

14.     Plaintiffs' principal places of business are located in Alameda County, California, and the matters described in this agreement arose, in substantial part, in Alameda County, California.

## THE CAPITAL MANAGEMENT AGREEMENTS

15.     On or about June 17, 2019, plaintiff CCSAC and PBC entered into a Capital Management Agreement, a true and correct copy of which is appended hereto as **Exhibit A**.

16.     On or about April 24, 2019, plaintiff CANN and PBC entered into a Capital Management Agreement, a true and correct copy of which is appended hereto as **Exhibit B**.

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

17.     Each Capital Management Agreement provides at paragraph 2(c) that "[PBC] will process all transactions including weekly check requests, ACH and wire transfers on behalf of the [respective plaintiff]".

18.     Each Capital Management Agreement further provides at paragraph 9:  "[PBC] will only take actions on the account or execute transactions as authorized by [respective plaintiff]. [PBC] will not unreasonably fail to take actions or execute transactions.  [PBC] is responsible for exercising ordinary care in processing transactions upon authorization by the [respective plaintiff] in accordance with this Agreement, and reserves the right to decline to process any transaction for any reason.  If a transaction is not completed, [PBC] will promptly communicate the circumstances to the [respective plaintiff]."

19.     Pursuant to the Capital Management Agreements, plaintiffs deposited well in excess of $2.8 million with PBC.

20.     Plaintiffs are informed and believe and based thereon allege that PBC unilaterally transferred some or all of plaintiffs' funds to accounts held by GRN, an entity controlled by its chief executive officer, Costello.  GRN has issued checks or been referenced on checks issued in payment of certain accounts of plaintiffs.

**FAILED TAX PAYMENT**

21.     On or about December 5, 2019, plaintiffs directed PBC to remit one million dollars ($1,000,000) to the California Department of Tax and Fee Administration on account for payment of tax liabilities owed by plaintiff CANN to the State of California.

22.     On or about December 30, 2019, PBC informed plaintiffs that the one million dollar ($1,000,000) payment to the State of California had been made on plaintiff CANN's behalf.

23.     On or about February 21, 2020, the State of California informed plaintiff that no payment for one million dollars ($1,000,000) had been received on account of plaintiff CANN's tax liabilities.  By virtue of the contended non-payment, the State of California has threatened to revoke plaintiff CANN's ability to do business in the State of California and has imposed penalties and interest upon plaintiff CANN for nonpayment of in excess of five hundred thousand dollars ($500,000).

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

24.     On or about February 21, 2020, and at various times thereafter, plaintiffs notified PBC that the one million dollar ($1,000,000) payment was not received by the State of California and requested evidence that the payment had in fact been made.  In response, PBC and Costello have affirmatively represented to plaintiffs that the payment was, in fact, made.  PBC has failed and refused to provide evidence that such payment had been made as PBC had represented to plaintiffs.

25.     To date, PBC has neither provided proof of the one million dollar ($1,000,000) payment to the State of California, refunded plaintiff's money to plaintiffs, nor provided justification as to why such payment was not made as instructed by plaintiffs.

26.     Additionally, on or about January 22, 2020, plaintiffs directed PBC to process an additional one million two hundred thousand dollar ($1,200,000) payment to the State of California on account of CANN's tax liability.  The non-payment of taxes by PBC may subject plaintiffs to additional penalties and interest to the State of California.  PBC failed to process this payment request without justification or explanation.

**FAILED VENDOR PAYMENTS**

27.     In or about December 2019, plaintiffs directed PBC to pay various of plaintiffs' vendors for services and products.  The aggregate amount of the instructed vendor payments was $1.7 million.

28.     Despite sufficient funds being available to make such payments, PBC has failed and refused to make certain of the directed vendor payments to plaintiffs' vendors or to refund plaintiff its money or to provide justification as to why such payments were not made as instructed by plaintiffs.  By virtue of the non-payment, plaintiffs' vendors have threatened to halt delivery of goods and services and to impose penalties upon plaintiffs.

**DELAYED PAYROLL PAYMENTS**

29.     At various times in and after late November 2019, plaintiffs directed PBC to fund payroll for plaintiffs' employees from the funds deposited by plaintiffs with PBC.

/ / /

/ / /

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

**COMPLAINT FOR BREACH OF CONTRACT**          5

30.     On a number of occasions, PBC delayed issuance of payroll past the date on which payroll was due, thereby forcing plaintiffs to pay their employees from other sources and to process the payroll at great cost and expenditure of time to plaintiffs.

## TERMINATION OF CAPITAL MANAGEMENT AGREEMENTS

31.     Based on the foregoing failures of PBC to make tax payments, vendor payments and payroll payments, plaintiffs have notified PBC that plaintiff elected to terminate the Capital Management Agreements and obtain the return of their remaining funds.

32.     In response to plaintiffs' request for termination of the Capital Management Agreement, PBC and Costello represented to plaintiffs that PBC agreed that the termination of the Capital Management Agreement was acceptable to PBC and Costello, that a reconciliation of the checks issues by PBC would be prepared and that when such reconciliation was completed and approved by plaintiffs, the remaining funds would be promptly refunded to plaintiffs. In addition, Costello promised to address the two outstanding tax payments.  To that end, Costello represented to plaintiffs that PBC would prepare a draft termination agreement for plaintiffs' approval, would provide proof of the $1 million tax payment and would provide an explanation as to why the $1.2 million tax payment was never processed.  Despite such representations, PBC has not prepared the termination agreement, has not completed the reconciliation PBC and Costello represented would be prepared, has failed to provide evidence that the $1 million tax payment was made, failed to provide an explanation as to why the $1.2 million tax payment was never processed and has failed and refused to return plaintiffs' funds to plaintiffs.

33.     In the discussions concerning termination of the Capital Management Agreements, Costello informed plaintiffs that plaintiffs' funds had been deposited into an account controlled by Costello.  Plaintiffs are aware that their funds may have been placed into one or more accounts in the name of GRN, which plaintiffs are informed and believe is a company controlled by Costello, its CEO.

/ / /

/ / /

/ / /

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

**COMPLAINT FOR BREACH OF CONTRACT**     6

1

2

3

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract)**

**Defendant PBC**

4       34.     Plaintiffs incorporates by reference the allegations of Paragraphs 1 through 33 of

5   this Complaint as though fully set forth herein.

6       35.     At all times herein relevant, plaintiffs were party to the Capital Management

7   Agreements with PBC.

8       36.     Plaintiffs have fully performed their obligations under the Capital Management

9   Agreements, save those obligations performance of which has been waived or excused.

10       37.     PBC has breached the Capital Management Agreements.  Its breaches of the

11   Capital Management Agreements include, without limitation, the following:

12       38.     Failing to process the one million dollar ($1,000,000) tax payment to the State of

13   California or to provide proof that such payment was made;

14       39.     Failing to process the vendor payments;

15       40.      Failing to timely process payroll expenses;

16       41.     Failing to acknowledge termination of the Capital Management Agreements;

17       42.     Failing to process the requested $1.2 million payment to the State of California;

18   and

19       43.     Failing to return to plaintiff the funds deposited with PBC by plaintiff which

20   currently exceed $2.8 million.

21       44.     As a direct and proximate consequence of PBC's breach of the Capital Management

22   Agreements, plaintiffs have suffered damages well in excess of $3.3 million (at least $500,000 for

23   the penalties incurred by CANN and $2.8 million for the unreturned funds on deposit with PBC,

24   exclusive of interest and costs).

25   / / /

26   / / /

27   / / /

28   / / /

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1

2

3

### SECOND CLAIM FOR RELIEF

### (Fraud)

### Defendants PBC and Costello

4        45.        Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 33 of

5    this Complaint as though fully set forth herein.

6        46.        Both in the Capital Management Agreements and repeatedly since the execution of

7    those Agreements, PBC through Costello has represented that it would process all payment

8    requests made to it by plaintiffs so long as funds were on deposit with PBC from plaintiffs.  At all

9    relevant times, PBC had sufficient funds on deposit with it to process plaintiffs' payment

10   instructions.

11       47.        PBC's promises and representations were material to plaintiffs' decision to deposit

12   and maintain in excess of $2.8 million with PBC.

13       48.        Since plaintiffs discovered that PBC had failed to make the one million dollar

14   ($1,000,000) tax payment to the State of California for CANN, Costello has falsely represented to

15   plaintiffs that proof of the payment would be promptly provided to plaintiffs, that a full

16   reconciliation of the all receipts and payments would be made, that a draft termination agreement

17   of the Capital Management Agreements would be promptly prepared and that all net funds

18   remaining after approved payments would be promptly refunded to plaintiffs.

19       49.        Costello's promises and representations were material to plaintiffs' decision to

20   withhold commencement of litigation over the conduct described above.

21       50.        PBC intended that plaintiffs rely on its promises and representations.

22       51.        Plaintiffs reasonably relied on PBC's and Costello's promises and representations.

23       52.        PBC and Costello made the promises and representations without any intention to

24   perform the same.

25       53.        PBC and Costello have repeatedly failed to honor plaintiffs' payment instructions,

26   to explain why such instructions were not followed, to complete the reconciliation, to provide the

27   termination agreement for the Capital Management Agreements or to refund the net funds due to

28   plaintiffs.

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

54.     As the direct and proximate result of PBC's and Costello's fraud, plaintiffs have been damaged in an amount not less than $3.3 million plus interest and costs.

55.     The aforementioned conduct of PBC and Costello was intentional and was despicable conduct which subjected plaintiffs to undue hardship and was in conscious disregard of plaintiffs' rights so as to justify an award of exemplary and punitive damages herein against PBC and Costello.

### THIRD CLAIM FOR RELIEF

### (Negligence)

### Defendant PBC

56.     Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

57.     As the custodian of plaintiffs' funds, PBC owed plaintiffs a duty of care to diligently and, in a timely manner, process payments pursuant to plaintiffs' instructions.

58.     PBC breached its duty of care by failing to diligently and in a timely manner process payments pursuant to plaintiffs' instructions.

59.     As the direct and proximate result of PBC's negligence, plaintiffs have been damaged in an amount not less than $3.3 million plus interest and costs.

### FOURTH CLAIM FOR RELIEF

### (Injunctive Relief)

### Defendants PBC, Costello and GRN

60.     Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

61.     PBC, Costello and/or GRN currently hold in excess of $2.8 million in funds belonging to plaintiffs.

62.     PBC's, Costello's and/or GRN's diversion of plaintiffs' funds for any purpose other than honoring the direct instructions for payment submitted to PBC by plaintiffs would result in harm and continuing litigation over the ownership of such funds.

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

63.     Unless and until enjoined and restrained by order of this Court, PBC's, Costello's and/or GRN's  continued exercise of dominion and control over plaintiffs' funds may result in a multiplicity of actions by, inter alia, the State of California and plaintiffs' vendors for whom payment should have been processed.

64.     Plaintiffs have no adequate remedy at law for the injury and irreparable harm which stands to be suffered by plaintiffs as a result of PBC's failure to process plaintiffs' payment instructions and by PBC's, Costello's and/or GRN's exercise of dominion and control over plaintiffs' funds.

65.     Plaintiff seeks a temporary restraining order, a preliminary injunction and a permanent injunction enjoining PBC, Costello and GRN from dissipating in any manner other than the express instruction by plaintiffs the funds provided to PBC by plaintiffs.

**FIFTH CLAIM FOR RELIEF**

**(Declaratory Relief - Duty to Indemnify)**

**Defendant PBC and Costello**

66.     Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

67.     As a consequence of PBC's failure to process payments as described above, the State of California and plaintiffs' vendors may assert claims against plaintiff on account of PBC's failure to process payments to the State of California and plaintiffs' vendors as instructed by plaintiffs.  Further, by virtue of PBC's transfer of plaintiffs' funds from PBC to bank accounts controlled by Costello, plaintiffs' funds are not available to plaintiffs for payment of plaintiffs' tax and vendor liabilities.

68.     There exists an actual controversy relating to the parties' legal rights and obligations with respect to any such claims against plaintiffs and the attendant potential liability. Specifically, plaintiffs contend that PBC and Costello are obligated to indemnify, defend, and hold plaintiffs harmless from and against from and against any and all expenses, losses, claims or liability, including costs and attorneys' fees, arising out of or in any way related to claims by the State of California or plaintiffs' vendors against plaintiffs for nonpayment of any sum which

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

**COMPLAINT FOR BREACH OF CONTRACT**        10

1    plaintiffs instructed PBC to pay.

2        69.    Plaintiffs are informed and believe that PBC and Costello deny this contention.

3        70.    By this action, plaintiffs seek a judicial determination of their rights and obligations

4    with respect to these matters.  Specifically, plaintiffs seek a judicial determination that PBC and

5    Costello are obligated to indemnify, defend, and hold plaintiffs harmless from and against  any

6    claim or liability asserted by the State of California or plaintiffs' vendors against plaintiffs for

7    nonpayment of any sum which plaintiffs instructed PBC to pay.

8        71.    Such a determination is necessary and proper at this time under all the

9    circumstances presented.

10                                **PRAYER**

11        WHEREFORE, plaintiffs pray as follows:

12        1.    For a Judgment in their favor and against PBC, Costello and GRN.

13        2.    For compensatory damages in excess of $2.8 million for funds held by PBC and

14   Costello and for in excess of an additional $500,000 to CANN for penalties imposed against it by

15   the State of California.

16        3.    For exemplary and punitive damages.

17        4.    For issuance of a temporary restraining order, preliminary injunction and

18   permanent injunction prohibiting PBC, Costello and GRN from dissipating plaintiffs' funds in any

19   manner except at the express direction of plaintiffs.

20        5.    For a Declaratory Judgment pursuant to 28 U.S.C. § 2201 that PBC and Costello

21   are obligated to indemnify, defend, and hold plaintiffs harmless from and against any claim or

22   liability asserted by the State of California and plaintiffs' vendors.

23        6.    For their costs of litigation; and

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

**COMPLAINT FOR BREACH OF CONTRACT**        11

7.    For such other and further relief as the Court may deem just and proper.

## REQUEST FOR JURY TRIAL

Plaintiffs CCSAC, Inc. and CANN Distributors, Inc. hereby request a jury trial.

DATED:  March 26, 2020                    WENDEL ROSEN LLP

By: _____
    Steven M. Morger
    Attorneys for Plaintiffs CCSAC, Inc. and CANN
    Distributors, Inc.

# EXHIBIT A



# CAPITAL MANAGEMENT AGREEMENT

1. **IDENTIFICATION OF PARTIES**. This agreement, is made between Pacific Banking Corp, of 3000 Northup Way, Suite 101, Bellevue, WA 98004, ("Company"); and CCSAC, Inc., of 2601-C Blanding Avenue, Suite 408, Alameda, CA 94501, ("Client").

2. **SERVICES TO BE PROVIDED**. The services to be provided by Company to Client are as follows:

   a. Receive Deposits into an Aggregate Account ("Account")
   b. Provide Capital Management Services for the Account
   c. Company will process all transactions including ACH and wire transfers on behalf of the Client
   d. Company will provide 24/7 internet banking via Web Based Secure Online Banking Portal for all transaction requests and balance inquiries
   e. Monthly Statements will be issued via USPS or PDF to Client and available online.

3. **FEES AND PAYMENTS**. Client will pay Company for banking services provided under this agreement as follows:

   a. Initial application and setup fee of $2,500.00 as outlined in the application package to be paid prior to commencement of services
   b. Client agrees to pay the Custodian 2% of the gross amount of funds deposited in cash and 1.25% of the gross amount of noncash deposited into the Account at time of settlement. Fee may be reassessed after a period of ninety (90) days.
   c. Fees as outlined in the Fee Schedule attached as Exhibit A, will be assessed per transaction as the Company requires. No fee for interbank transfers.
   d. Company will deduct fees from Client account upon settlement or completion of services

4. **DEPOSIT**. Company will coordinate with the Client to provide an initial deposit of US$25,000.00, to be received to the aggregate account upon execution of this Agreement and prior to the commencement of capital management services as described herein. Funds related to any initial cash deposit will process and become available after 10 business days. Client will maintain a minimum deposit amount of US$25,000.00 with the Company for the first (90) days after account funding. Subsequent minimum balance will be assessed based on compliance and risk analysis performed during the first (90) days Company accounts are protected by an FDIC insured institution.

5. **ASSIGNMENT**. Company shall not assign any of its rights or obligations hereunder without the prior written consent of the Client.

6. **CONFIDENTIALITY**. The terms, conditions and existence of this Agreement are strictly confidential. Client shall indemnify, defend and hold Company harmless from any and all loss, cost, injury, damage or claim that may result, directly or indirectly, from the failure of the Client to maintain the confidentiality of the information provided pursuant to this Agreement. Client shall keep the identity of its commercial banks, corresponding banks, processors, and/or acquiring banks confidential unless expressly permitted by Company. Any violation of this confidentiality clause shall be grounds for terminating this Agreement.

7. **CLIENT WARRRANTIES.** Client shall not misrepresent the manner in which the Company provides its services or the procedure the Company follows.  Client agrees not to circumvent the Company in any way to its commercial banks, corresponding banks, processors, and/or acquiring banks. It will not engage in direct communication in any way via phone, text, facsimile, and email. All private banking and/or support inquires by the Client will be made through the toll-free customer service number on the Online Banking Portal or to the Company directly.

8. **RESPONSIBILITIES OF CLIENT**. Client may initiate or request transactions by written instruction, verbal instruction or via input into the PBC secure online web portal. Verbal instructions to be confirmed back to the client in writing or via notification by the PBC secure online web portal.  Any costs related to third party transportation or Cash in Transit (CIT) services will be the responsibility of the Client.  If any action, including administrative proceedings, garnishment, tax levies, restraining orders or another action is brought against the account, you will be liable to the Company for any loss, cost or expense (including attorneys' fees) resulting from our compliance with any legal process. Client is responsible for any applicable tax consequences related to the account(s) with the Company.

9. **RESPONSIBILITIES OF COMPANY**. Company will only take actions on the account or execute transactions as authorized by the Client. Company will not unreasonably fail to take actions or execute transactions. Company is responsible for exercising ordinary care in processing transactions upon authorization by the Client in accordance with this Agreement, and reserves the right to decline to process any transaction for any reason. If a transaction is not completed, the Company will promptly communicate the circumstances to the Client.  If there are not sufficient funds in the Client account as of the transaction date, or if the account is subject to garnishment, levy, attachment or other legal process, you're your transaction will not be made.  Company will not be responsible in any way for damages or costs the client might incur due to non-sufficient funds.

10. **MUTUAL NONDISPARAGEMENT**. The Client and the Company each agree that they hold the other in esteem and each agrees not to make disparaging comments about the other. The Client and Company further agree that each will not engage in any other conduct that would otherwise harm the reputation or good will of the Company or its management or Employees.

11. **TERM & TERMINATION.** The initial term of this agreement shall be for a period of 6 months and shall renew for an additional successive 6 months unless any Party hereto provides the other written notice of its intent not to renew ninety (90) days prior to the expiration of the current Term.  This Agreement shall become effective as of its execution and shall continue in full force and effect until terminated as hereinafter provided. This Agreement may be terminated by either party upon giving 90 days prior

written notice to the other party or such shorter period as is mutually agreed upon by the parties. Notwithstanding the foregoing, this Agreement may be terminated by any party upon the breach of the other party of any material term of this Agreement if such breach is not cured within 15 days of written notice of such breach to the breaching party.

**12. GENERAL PROVISIONS**. This agreement sets forth the entire understanding of the parties. Any amendments must be in writing and signed by both parties. This agreement shall be construed under the laws of the State of Washington. If any provision of this agreement is held to be invalid, illegal or unenforceable, the remaining portions of this agreement shall remain in full force and effect and construed so as to best effectuate the original intent and purpose of this agreement.

**13. EFFECTIVE DATE OF AGREEMENT**. This agreement becomes effective as of the date it is executed by the parties to do so.

The foregoing is agreed to by:

_____        _6/14/19_____
By: CCSAC, Inc.                                 Date
Name: John Oram, CEO

_____        June 17, 2019
By: Pacific Banking Corp                        Date
Name: Justin Costello, CEO

EXHIBIT A

FEE SCHEDULE

| Bank Account and Processing Fees | | |
|---|---|---|
| Domestic ACH | $25.00 | Funds availability (72 hours) after compliance approval |
| Domestic Wire Incoming | $40.00 | Funds availability (72 hours) after compliance approval |
| Domestic Wire Outgoing | $50.00 | Funds availability (72 hours) after compliance approval |
| International Wire Incoming /Outgoing | $100.00 | Funds availability (72 hours) after compliance approval |
| Cashier's Check | $25.00 | Per check |
| Bank account overdraft fee | $35.00 | Per instance overdraft fee |
| Returned Check/NSF | $40.00 | Applies to check deposits rejected for NSF |
| NSF for ACH Debit | $40.00 | ACH transactions only |

**EXHIBIT B**



# CAPITAL MANAGEMENT AGREEMENT

1. **IDENTIFICATION OF PARTIES**. This agreement, is made between Pacific Banking Corp, of 3000 Northup Way, Suite 101, Bellevue, WA 98004, ("Company"); and CANN Distributors, Inc., of 810 - 81st Ave, Oakland, CA 94621, ("Client").

2. **SERVICES TO BE PROVIDED**. The services to be provided by Company to Client are as follows:

   a. Receive Deposits into an Aggregate Account ("Account")
   b. Provide Capital Management Services for the Account
   c. Company will process all transactions including weekly check requests, ACH and wire transfers on behalf of the Client
   d. Company will provide a debit card to the Client after 30 days of successful correspondence
   e. Company will provide 24/7 internet banking via Web Based Secure Online Banking Portal for all transaction requests and balance inquiries
   f. Monthly Statements will be issued via USPS or PDF to Client and available online.

3. **FEES AND PAYMENTS**. Client will pay Company for banking services provided under this agreement as follows:

   a. Initial application and setup fee of $2,500.00 as outlined in the application package to be paid prior to commencement of services
   b. Client agrees to pay the Custodian 2% of the gross amount of funds deposited in cash and 1.25% of the gross amount of noncash deposited into the Account at time of settlement. Fee may be reassessed after a period of ninety (90) days.
   c. Fees as outlined in the Fee Schedule attached as Exhibit A, will be assessed per transaction as the Company requires.
   d. Company will deduct fees from Client account upon settlement or completion of services

4. **DEPOSIT**. Company will coordinate with the Client to provide an initial deposit of US$100,000.00, to be received to the aggregate account upon execution of this Agreement and prior to the commencement of capital management services as described herein. Funds related to any initial cash deposit will process and become available after 10 business days.  Client will maintain a minimum deposit amount of $50,000.000 with the Company for the first (90) days after account funding.  Subsequent minimum balance will be assessed based on compliance and risk analysis performed during the first (90) days Company accounts are protected by an FDIC insured institution.

5. **ASSIGNMENT**. Company shall not assign any of its rights or obligations hereunder without the prior written consent of the Client.

6. **CONFIDENTIALITY**. The terms, conditions and existence of this Agreement are strictly confidential. Client shall indemnify, defend and hold Company harmless from any and all loss, cost, injury, damage or claim that may result, directly or indirectly, from the failure of the Client to maintain the confidentiality of the information provided pursuant to this Agreement. Client shall keep the identity of its commercial banks, corresponding banks, processors, and/or acquiring banks confidential unless expressly permitted by Company. Any violation of this confidentiality clause shall be grounds for terminating this Agreement.

7. **CLIENT WARRRANTIES.** Client shall not misrepresent the manner in which the Company provides its services or the procedure the Company follows. Client agrees not to circumvent the Company in any way to its commercial banks, corresponding banks, processors, and/or acquiring banks. It will not engage in direct communication in any way via phone, text, facsimile, and email. All private banking and/or support inquires by the Client will be made through the toll-free customer service number on the Online Banking Portal or to the Company directly.

8. **RESPONSIBILITIES OF CLIENT**. Client may initiate or request transactions by written instruction, verbal instruction or via input into the PBC secure online web portal. Verbal instructions to be confirmed back to the client in writing or via notification by the PBC secure online web portal.  Any costs related to third party transportation or Cash in Transit (CIT) services will be the responsibility of the Client.  If any action, including administrative proceedings, garnishment, tax levies, restraining orders or another action is brought against the account, you will be liable to the Company for any loss, cost or expense (including attorneys' fees) resulting from our compliance with any legal process. Client is responsible for any applicable tax consequences related to the account(s) with the Company.

9. **RESPONSIBILITIES OF COMPANY**. Company will only take actions on the account or execute transactions as authorized by the Client. Company will not unreasonably fail to take actions or execute transactions. Company is responsible for exercising ordinary care in processing transactions upon authorization by the Client in accordance with this Agreement, and reserves the right to decline to process any transaction for any reason. If a transaction is not completed, the Company will promptly communicate the circumstances to the Client.  If there are not sufficient funds in the Client account as of the transaction date, or if the account is subject to garnishment, levy, attachment or other legal process, you're your transaction will not be made.  Company will not be responsible in any way for damages or costs the client might incur due to non-sufficient funds.

10. **MUTUAL NONDISPARAGEMENT**. The Client and the Company each agree that they hold the other in esteem and each agrees not to make disparaging comments about the other. The Client and Company further agree that each will not engage in any other conduct that would otherwise harm the reputation or good will of the Company or its management or Employees.

11. **TERM & TERMINATION.** The initial term of this agreement shall be for a period of 6 months and shall renew for an additional successive 6 months unless any Party hereto provides the other written notice of its intent not to renew ninety (90) days prior to the

expiration of the current Term.  This Agreement shall become effective as of its execution and shall continue in full force and effect until terminated as hereinafter provided. This Agreement may be terminated by either party upon giving 90 days prior written notice to the other party or such shorter period as is mutually agreed upon by the parties. Notwithstanding the foregoing, this Agreement may be terminated by any party upon the breach of the other party of any material term of this Agreement if such breach is not cured within 15 days of written notice of such breach to the breaching party.

12. **GENERAL PROVISIONS**. This agreement sets forth the entire understanding of the parties. Any amendments must be in writing and signed by both parties. This agreement shall be construed under the laws of the State of Washington. If any provision of this agreement is held to be invalid, illegal or unenforceable, the remaining portions of this agreement shall remain in full force and effect and construed so as to best effectuate the original intent and purpose of this agreement.

13. **EFFECTIVE DATE OF AGREEMENT**. This agreement becomes effective as of the date it is executed by the parties to do so.

The foregoing is agreed to by:

_____     04/19/2019
By: CANN Distributors, Inc.          Date
Name:  John Oram, CEO

_____     04/24/2019
By: Pacific Banking Corp             Date
Name: Justin Costello, CEO

EXHIBIT A

FEE SCHEDULE

| Bank Account and Processing Fees | | |
|---|---|---|
| Domestic ACH | $25.00 | Funds availability (72 hours) after compliance approval |
| Domestic Wire Incoming | $40.00 | Funds availability (72 hours) after compliance approval |
| Domestic Wire Outgoing | $50.00 | Funds availability (72 hours) after compliance approval |
| International Wire Incoming /Outgoing | $100.00 | Funds availability (72 hours) after compliance approval |
| Cashier's Check | $25.00 | Per check |
| Bank account overdraft fee | $35.00 | Per instance overdraft fee |
| Returned Check/NSF | $40.00 | Applies to check deposits rejected for NSF |
| NSF for ACH Debit | $40.00 | ACH transactions only |