Steven M. Morger (Bar No. 115108)
Robert W. Selna (Bar No. 230385)
**WENDEL ROSEN LLP**
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: smorger@wendel.com
Email: rselna@wendel.com

Attorneys for Plaintiffs CCSAC, Inc., a California
corporation and CANN DISTRIBUTORS, INC.,
a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CCSAC, INC., a California corporation and CANN DISTRIBUTORS, INC., a California corporation,<br><br>       Plaintiff,<br><br>       vs.<br><br>PACIFIC BANKING CORP., a Washington corporation, JUSTIN COSTELLO, an individual and GRN FUNDS, LLC, a Washington limited liability company,<br><br>       Defendant. | Case No. 3:20-CV-02102<br><br>**DECLARATION OF JOHN ORAM IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>DATE:<br>TIME:<br>DEPT: |

I, John Oram, declare as follows:

1.      I am the Chief Executive Officer of CANN Distributors, Inc. ("CANN") and CCSAC, Inc. ("CCSAC"). I have personal knowledge of the matters set forth below and, if called to testify, would testify competently thereto.

2.      Starting in the spring of 2019 CANN and CCSAC were seeking to contract with a check and wire service processor in order to pay taxes, vendors and employees associated with each company. In that vein, I signed contracts between CANN and Pacific Banking Corp ("PBC") on April 24, 2019 and between CCSAC and PBC on June 14, 2019, in which PBC promised to, "process all transactions, including weekly check requests, ACH and wire transfers on behalf of the Client." Combined, CANN and CCSAC placed more than $8 million under PBC's control.

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

3. In the first six months of the contracts, PBC was, on occasion, slow to make vendor and payroll payments following payment requests, but generally PBC fulfilled its obligations under the contracts. In late November 2019 that changed. CANN and CCSAC requested that PBC process and send a $700,000 check to a bank account controlled by a CANN affiliate, NUG, Inc. ("700,000 check") and to process a wire of $1,007,131.47 to be issued directly to the California Department of Tax and Fee Administration ("CDTFA) for the payment of state taxes ("$1 million tax wire").

4. PBC did not process the $700,000 check or the $1 million tax wire request. Later, my staff and I were contacted by Justin Costello, PBC's CEO ("Costello") and Richard Hawkins, PBC's Chief Operating Officer ("Hawkins"). Costello and Hawkins claimed the $700,000 check and $1 million tax wire requests triggered a Treasury Department Financial Crimes Enforcement Network ("FinCEN") audit and that, as a result, CANN and CCSAC funds in the possession of PBC were frozen. Costello and Hawkins never provided proof of a FinCEN audit and no one at CANN or CCSAC was ever contacted by the Treasury Department or other regulatory body regarding the payment requests.

5. My staff and I continued to try to compel PBC to process the $1 million tax wire payment to the CDTFA. In that vein, on December 30, 2019, CANN sent a second Domestic Wire Transfer request to PBC to make the $1 million tax wire payment. We later received a bank statement from PBC showing that the $1 million tax wire amount was drawn from the CANN account on December 30, 2019. The bank statement did not show where the $1 million was sent. On February 21, 2020 CANN received a notice from the CDTFA that the CDTFA did not receive $1 million tax wire payment.

6. Subsequently PBC ignored a separate January 22, 2020 request from CANN to process a $1,279,949.40 tax wire payment to the CDTFA ("$1.2 million tax wire"), PBC. Our CFO, Ed Ng, ("Ed") followed up several times via phone, text, and email and has not received a response from any PBC representative, including Costello or Hawkins regarding the $1.2 million tax wire.

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

7.      In addition to PBC's failure to timely process the $700,00 check, $1milion, and $1.2 million tax wire requests, PBC also developed a pattern of responding very slowly to vendor payment and payroll requests that Ed and his team submitted to PBC well in advance of payment being due. In some instances, PBC simply did not respond to the requests. In the instance of payroll, Ed provided PBC with ten-days' notice. The notice did not seem to assist PBC in processing the payroll payments on time. Instead, PBC payroll checks would arrive so close to the payroll payment due date or after the payroll payment due date, that on several occasions, CANN and CCSAC were forced to pay employees in cash. This happened as recently as March 20, 2020. Following a March 13 payroll processing request from Ed's staff on March 13, 2020, Richard Hawkins, on March 18, emailed Ed's staff to let them know that PBC would not be making the payroll payment processing deadline of March 20, 2020 and instead said that approval "may not be till [sic] Monday." As of the writing of this document, PBC has failed to process the March 20, 2020 payroll payment request. In the instance of vendor payments, to date, PBC has failed to process or has been late to approve the processing of $1.7 million in vendor payments.

8.      CANN, CCSAC, NUG, Inc. (an affiliate of CANN and CCSAC that also entered into a lower value contract with PBC) and I have indicated to PBC and Costello that we are terminating our contracts with PBC. On December 6, 2019 Ed wrote to Costello and PBC providing notice that PBC had breached the contracts and that continued failures to authorize payments would result in termination of the contracts within 15 days.

9.      As of January 31, 2020, PBC had not processed the $1.2 million tax wire payment despite assurances from Costello and Hawkins that it would be processed. By February 5, 2020 the payment still had not been made. An email from Richard Hawkins on February 10, 2020 indicates that he is "looking into [the wire tax wire payments]." Despite continued requests, PBC has never provided an explanation for the $1 million tax wire payment that PBC allegedly issued to the CDTFA, but that CDTFA has no record of, or the $1.2 million tax wire payment that PBC effectively ignored.

10.     Starting February 21, 2020, I tried to reach Costello and Hawkins by phone many times a day for several days. Neither would answer. Finally, on February 24, I called Costello

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1  from a Colorado number instead of my Oakland, California number. Costello picked up and

2  promised to call me back at noon the same day. He did not. After several more attempts, I reached

3  Costello again. Costello initially claimed to be unaware of our difficulties getting payments

4  processed but did agree to get his operations team to investigate the issue. Costello further agreed

5  to do three things as follows: 1) Provide documents that explain what has happened to the $1

6  million and $1.2 million tax wire requests; 2) Send a draft termination agreement that Costello

7  said he preferred to use to terminate the contracts; and 2) Complete a reconciliation of all payment

8  requests made by CANN and CCSAC to determine not only which payments were actually made,

9  but also to identify checks that may have been issued but never cashed (e.g., we know of payroll

10  checks that were issued by PBC that have not been cashed by CANN and/or CCSAC employees

11  and/or vendors because they arrived too late to make payments, which were instead made by

12  CANN and CCSAC in cash).

13        11.    On February 25 I had a call with Hawkins to follow up on the three items that

14  Costello and I discussed on our February 24 call. Hawkins agreed to work diligently on the three

15  items. Also, on February 25, I listed in an email to Costello and Hawkins tasks and deadlines that

16  reflected what Costello agreed to on our February 24 phone call and Hawkins agreed to on our

17  February 25 call. The deadlines were as follows: 1) Tax payment explanations and supporting

18  documents: February 27, 2020; 2) Providing draft termination agreement: February 27, 2020; 3)

19  Complete the reconciliation of checks issued and cashed completed: February 28, 2020.

20        12.    As of the writing of this declaration, PBC, Costello and/or Hawkins has failed to

21  complete tasks 1-3 above. As noted above, On March 18, 2020 PBC informed Ed that PBC would

22  not be making the March 20, 2020 deadline for issuing payroll checks, but that the payroll checks

23  might be issued on March 23, 2020. As of the writing of this declaration, PBC has not issued the

24  March 20, 2020 payroll checks. Including the unaccounted for $1 million wire tax payment, there

25  are still approximately $2.8 million of CANN and CCSAC's funds purportedly in PBC's custody.

26  After exhausting all reasonable efforts to compel PBC to make required payments, explain

27  payments that were not made or acknowledged, and to facilitate the formal termination of the

28  agreements between PBC and CANN and PBC and CCSAC, I felt like PBC had left me and my

DECLARATION OF JOHN ORAM IN SUPPORT
OF PLAINTIFFS' EX PARTE MOTION FOR
TEMPORARY RESTRAINING ORDER
    4              Case No. 4:20-CV-02102

companies no other choice other than to file a lawsuit against PBC.

13.     Based on the actions of PBC, Costello and Hawkins to date, I am concerned that PBC has, or may at any time, divert my companies' remaining $2.8 million to other accounts, companies or individuals.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 25, 2020 in Oakland, California

_____
John Oram, CEO CANN and CCSAC

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

DECLARATION OF JOHN ORAM IN SUPPORT
OF PLAINTIFFS' EX PARTE MOTION FOR
TEMPORARY RESTRAINING ORDER

5

Case No. 4:20-CV-02102