SELNA PARTNERS LLP
70 Washington Street, Suite 303
Oakland, California 94607
Telephone: (510) 336-8974
Steven M. Selna (Bar No. 133409)
Robert W. Selna (Bar No. 230385)
Email: steven@selnapartners.com
Email: robert@selnapartners.com

Attorneys for Plaintiffs CCSAC, INC., a California corporation and CANN DISTRIBUTORS, INC., a California corporation

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CCSAC, INC., a California corporation and CANN DISTRIBUTORS, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>PACIFIC BANKING CORP., a Washington corporation, JUSTIN COSTELLO, an individual and GRN FUNDS, LLC, a Washington limited liability company,<br><br>Defendants. | Case No. 3:20-cv02102-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY ACTION**<br><br>Date: November 10, 2022<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Judge: The Hon. James Donato |

Plaintiffs CCSAC, INC., and CANN DISTRIBUTORS, INC., ("Plaintiffs") hereby oppose Defendants PACIFIC BANKING CORP, JUSTIN COSTELLO and GRN FUND, LLC's ("Defendants") motion to stay the action, as follows:

## I. INTRODUCTION

More than two and a half years into this litigation, Defendants seek an indefinite and unlimited stay. A stay is unwarranted and would be contrary to the interests of justice. Defendant Costello has affirmatively misled the Court, disregarded its orders, and abused the judicial process. Granting a stay now would only undermine the Court's authority and reward Costello's willful misconduct. Under these circumstances, the Court should instead exercise its inherent authority and grant terminating sanctions against Defendants.

At the September 8, 2022, hearing, the Court indicated that sanctions should be awarded for Defendants' discovery abuses and instructed Plaintiffs to file two motions for sanctions. Plaintiffs filed their motions which contain overwhelming evidence that terminating sanctions are justified. Since then, the case for terminating sanctions has only gotten stronger with the disclosure that Costello misled the Court, both at the September 8 hearing and in his subsequent declaration, about the status and location of Plaintiffs' funds. Plaintiffs are therefore entitled to a ruling from the Court now on their motions and also as to whether Costello will be held in civil contempt for violating the Court's preliminary injunction order.

Plaintiffs have a strong interest in expeditiously resolving this case and would be significantly prejudiced by a stay. Defendants misappropriated nearly $3 million of Plaintiffs' funds, exposing Plaintiffs to significant tax penalties and other financial hardship. Since then, Defendants have ignored multiple Court orders, systematically shirked their discovery obligations, and submitted a sham declaration opposing summary judgment, greatly increasing the costs of this litigation. Costello's apparent violation of the Court's preliminary injunction order also demonstrates that Plaintiffs' funds are in serious jeopardy. An open-ended delay in resolving this case makes it increasingly unlikely that Plaintiffs will ever get their money back.

In contrast, Costello's claimed Fifth Amendment interests are undermined by the fact that he has already given two depositions in this case, filed several declarations and otherwise waived

the privilege. Under these circumstances, any potential burden on Costello's Fifth Amendment interests is, at best, negligible. Further, even if Costello's interests were threatened, which they are not, the Court could take steps short of a stay to protect them. Accordingly, even if the Court is not inclined to grant terminating sanctions at this time, the case should be allowed to proceed.

For all these reasons, Defendants' motion should be denied.

## II.    SUMMARY AND PROCEDURAL BACKGROUND

This action arises out of Defendants' multiple breaches of their Capital Management Agreements with Plaintiffs, and their continuing refusal to return more than $2.86 million of Plaintiffs' funds that were intended to pay Plaintiffs' state taxes and other obligations. Defendants repeatedly ignored Plaintiffs' requests to return their remaining funds. They also fraudulently claimed to have made a tax payment of $1,007,131.47 on Plaintiffs' behalf to the California Department of Tax and Fee Administration ("CDTFA"). As a result of Defendants' failure to process the above-referenced tax payment, as well as another tax payment of $1,279,949.40, the CDTFA assessed more than $2 million in penalties against Plaintiffs.

Defendants claimed they were holding at least $1.86 million of Plaintiffs' funds in "aggregated accounts," but as recently seen in the indictment, that was not true. At this juncture, Plaintiffs' funds are entirely unaccounted for.

Over the last fifteen months, Plaintiffs were forced to file numerous discovery deficiency letters to the Court, resulting in Court orders that Defendants essentially ignored. Most recently, at the Court's urging, Plaintiffs filed the above-referenced sanctions motions against Defendants (Dkt. Nos. 155, 158).

At the September 8, 2022, hearing, the Court ordered Costello to submit a declaration regarding the location of Plaintiffs' funds that were the subject of the Court's preliminary injunction order and confirm he had complied with the order during the pendency of this case. (Dkt. No. 148). In response to Costello' declaration, the Court issued an Order to Show Cause ("OSC") regarding whether Costello should be held in civil contempt for violating the preliminary injunction order (Dkt. No. 157).

## III.    ARGUMENT

### III. ARGUMENT

#### A. STANDARD OF REVIEW ON MOTION TO STAY

The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. *Keating v. Office of Thrift Supervision,* 45 F. 3d 322, 324 (9th Cir. 1995). "In the absence of substantial prejudice to the rights of the parties involved, such parallel [or related] proceedings are unobjectionable." *SEC V. Dresser Inds., Inc.,* 628 F. 2d 368, 1374 (D.C. Cir. 1980).

In determining whether to stay civil proceedings in the face of a related criminal action, courts consider "the particular circumstances and compelling interests involved in the case." *Fed. Sav. & Loan Ins. Corp. v. Molinaro,* 889 F. 2d 899, 902 (9th Cir. 1989). Courts first consider "the extent to which the defendant's Fifth Amendment rights are implicated." *Keating,* 45 F. 3d at 324. In addition, courts examine the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceeding may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Id.* at 325. Importantly, "Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." *Id.,* quoting *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976).

As to the first factor above, courts in this district have recognized that a plaintiff's interest in damages might not be adequately protected if the court were to grant a stay, during which time the assets would be spent. See, *eBay, Inc., v. Digital Point Solutions, Inc.,* 2010 WL 702463; *Applied Materials, Inc., v. Semiconductor Spares, Inc., et al.* 1995 WL 261451. It is also well-settled that potentially criminal conduct should not serve as a "shield against a civil lawsuit and prevent plaintiff from expeditiously advancing its claim." *Paine, Webber, Jackson & Curtis, Inc.*

*v. Malon S. Andrus, Inc.,* 486 F.Supp. 1118 (S.D.N.Y.1980). Courts have also concluded that proceeding with a civil case would best serve the interests of the public by "ensuring that aggrieved parties are made whole as rapidly as possible." *See Starlight Int'l Herlihy* (D.Kan.1998) 1998 WL 560045 at 3; *see also Applied Materials, supra,* at 4.

### B. THE COURT'S INHERENT AUTHORITY TO IMPOSE SANCTIONS

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101 (2017). A court's "[inherent] power includes the ability to punish conduct before the court as well as actions beyond the court's confines, regardless of whether that conduct interfered with courtroom proceedings….A district court may, among other things, dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorneys' fees, or assess fines." *Am. Unites for Kids v. Rousseau,* 985 F.3d 1075, 1088 (9th Cir. 2021).

For the following reasons, rather than granting a stay, the Court should instead exercise its inherent authority and grant terminating sanctions against Defendants.

### C. THE MOTION SHOULD BE DENIED

#### 1. A Stay Is Unwarranted and Contrary to Compelling Interests of Justice

Given the circumstances of this case, a stay is unwarranted, particularly when two motions are pending and an OSC hearing is scheduled for one week from now. At the September 8, 2022, hearing, this Court urged Plaintiffs to file two sanctions motions. The Court's order was precipitated by Defendants' willful disregard of this Court's numerous prior discovery orders over the last eleven months. At the same hearing, Plaintiffs advised the Court of Defendants' apparent noncompliance with the Court's Preliminary Injunction Order. In response, the Court quizzed Costello about the status and location of Plaintiffs' funds:

**THE COURT:** What's the answer? Where is the money? I mothballed the money. Where is it? It should be in an account to the dollar, to the cent. I did this. Where is it? …

**MR. COSTELLO:** Your Honor, we believe the monies are at a credit union in

Washington. (September 8, 2022, hearing transcript (Dkt. No.156, pp. 23-24).

In response, the Court ordered Costello to file a declaration under penalty of perjury identifying the location of Plaintiffs' funds and certifying that Defendants had adhered to the injunction. (Dkt. No. 148).

On September 15, 2022, Costello submitted a sworn declaration, stating the following:

…(3) Concerning "identifying" where the CCSAC funds subject to the preliminary injunction order, Dkt. No. 23, are located," ***the answer is an aggregated account in the name of Defendant GRN Funds, LLC….***

(7) The "balance of the funds as of September 9, 2022" ***is at least $2,923, 858.13 for funds within that account that are attributable to Plaintiffs***….(emphasis added). (Dkt. No. 151).

Costello further declared that he had abided by the Court's preliminary injunction order since it was issued. Id.

Costello's suspect declaration prompted the Court to issue an Order to Show Cause regarding why he should not be held in civil contempt for violating the preliminary injunction order and set a hearing for October 18, 2022. (Dkt. No. 157). On September 28, 2022, the United States Attorney filed an indictment against Costello alleging, among other things, that contrary to Costello's sworn statement in this case, the account he claimed contained more than $2.9 million of Plaintiffs' funds contained only $15. (Dkt. No.159).

**2. The Court Should Order Terminating Sanctions**

Given the circumstances above, granting an indefinite stay before ruling on Plaintiffs' pending motions and the OSC hearing would totally undermine this Court's authority to enforce its orders and be a grave disservice to the interests of justice. A ruling on Plaintiffs' sanction motions should not be delayed. The subject of these motions is not new. Defendants spent the last fifteen months systematically avoiding their discovery obligations, and Costello was an active participant. Defendants' violation of multiple Court orders is what prompted the Court to instruct Plaintiffs to file their motions. In the context of the motions, the only issue before the Court is the appropriate sanction for Defendants' behavior. Granting an indefinite stay before ruling on the pending motions would only reward Defendants' misconduct. Accordingly, given the

overwhelming evidence of Defendants' misconduct and willful disobedience of the Court's Orders, the Court should instead exercise its inherent authority to grant terminating sanctions, and respectfully should do so now.

### 3. Costello's Fifth Amendment Rights are Not Threatened

Costello's Fifth Amendment rights are not implicated by the pending motions. In addition, his rights are not threatened in the discovery process. Costello already gave two depositions in this case and, in response to every question posed to him as an individual, asserted his Fifth Amendment privilege. The limited remaining discovery pertains to the structure of the corporate defendants, which do not have a Fifth Amendment privilege to assert.

Costello's motion suggests his Fifth Amendment rights are also threatened by the Court's expectation that he will be prepared to testify at the OSC hearing on October 18, 2022. As to the subject of that hearing, Costello has no Fifth Amendment privilege relating to his compliance with a court order. There is also no requirement that Costello personally attend the OSC hearing, which can and should be handled by the lawyer who prepared his declaration.

In short, Costello can point to no circumstances, either in the context of the discovery or hearing processes, in which his Fifth Amendment rights are threatened in this case.

### 4. The *Keating* Factors Do Not Support a Stay

The *Keating* factors all favor a denial of Defendants' motion. First, Plaintiffs' interest in a judgment without further delay is substantial. Defendants misappropriated almost $3 million of Plaintiffs' operating funds. Defendants also represented to Plaintiffs that they would make more than $2.2 million in tax payments on Plaintiffs' behalf to the CDTFA and failed to do so, resulting in 1) Plaintiffs defaulting on the tax payments; 2) CDTFA assessing Plaintiffs a 50% tax penalty; 3) Plaintiffs' loss of crucial operating capital and 4) delayed payments to Plaintiffs' vendors and employees, compromising those business relationships. Plaintiffs have also incurred great expense simply trying to get their money back. In short, the financial harm to Plaintiffs is real and ongoing. In addition, Costello's apparent violation of the preliminary injunction order makes it clear that Plaintiffs' ability to recover their funds is in serious jeopardy. An open-ended stay and attendant costs would only further compound Plaintiffs' already significant injury.

As to the second *Keating* factor, other than claiming that he is currently not in contact with his client, Defendants' counsel has failed to demonstrate how Costello's "fulsome involvement and participation" would be precluded in this case. Further, as noted above, there is no burden to Defendants to proceeding with the civil case, because Costello's Fifth Amendment rights are not threatened. Even if they were, however, the Court could take steps short of a stay, such as issuing a protective order to prevent disclosure of further testimonial evidence to the federal government. *See eBay, supra.*

As to the third factor, in addition to the interest in enforcing its orders, this Court has a strong interest in moving this case off its docket. Due to Defendants' chronic and ongoing failure to comply with the Court's numerous orders, the Court has been forced to devote disproportionate resources to the management of this case. An indefinite stay would only mean more of the same. Moreover, the extent to which common issues would be resolved in a criminal proceeding is entirely speculative. A stay of this action would also be of unknown duration, jeopardizing this Court's schedule. In short, the Court's interest in efficiently managing its docket should result in a denial of Defendants' motion.

As to the fourth *Keating* factor, Defendants argument that non-party banks would somehow be burdened by proceeding with the immediate case is totally unsupported. In addition, the claimed interests of non-party Richard Hawkins are speculative, and undermined by the fact that Hawkins has already testified in this case. In contrast, the State of California has a strong interest in the timely payment of millions of dollars in state tax revenue.

As to the fifth *Keating* factor, there can be no doubt that allowing the civil case to proceed will best serve the interests of the public by sending a clear message that wronged Plaintiffs will be made whole as soon as possible.

### IV.  CONCLUSION

Granting a stay now would undermine this Court's authority to enforce its own orders and be contrary to the interests of justice. Costello defrauded Plaintiffs of almost $3 million. At every juncture, he used the resources of this Court to perpetuate that fraud. Under the circumstances, the Court should instead grant terminating sanctions against Defendants.

Defendants also failed to satisfy their burden of showing that Costello requires a stay to protect his Fifth Amendment rights. Plaintiffs, on the other hand, have shown that their interest in obtaining a ruling on the pending motions and a judgment without further delay is substantial. Potentially criminal conduct should not serve as a shield against this civil lawsuit and prevent Plaintiffs from expeditiously advancing their claim. Accordingly, even if the Court is not inclined to issue terminating sanctions at this time, it should still allow the case to proceed.

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to stay this action.

Dated: October 11, 2022                     SELNA PARTNERS LLP


                                            /s/Steven M. Selna
                                            Steven M. Selna
                                            Attorneys for Plaintif

## CERTIFICATE OF SERVICE

I am employed in the County of Alameda, State of California. I am over the age of 18 years and not a party to the within action; my business address is 70 Washington Street, Suite 303, Oakland, California 94607.

On October 11, 2022, I served the foregoing documents described as **OPPOSITION TO MOTION TO STAY ACTION** to counsel for Defendants, as follows:

Stephen M. Lobbin
SML Avvocati P.C.
888 Prospect Street
Suite 200
San Diego, CA 92037
sml@smlavvocati.com

___ (BY MAIL) I deposited such envelope in the mail at Oakland, California. The envelope mailed with postage thereon fully prepaid.

___ (BY MAIL) I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Oakland, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date od deposit for mailing in affidavit.

_X_ (BY ELECTRONIC TRANSMISSION) I transmitted a PDF version of this document by electronic mail to the party identified on the attached service list using the email address indicated:

___ (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.

X (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 11, 2022, at Oakland, California.

Steven M. Selna